In re Prem BHANDARI d/b/a Bhandari Associates, Debtor.

Vernon L. LONGSHORE, Plaintiff,

v.

Prem BHANDARI d/b/a Bhandari Associates, Defendant.

Bankruptcy No. A90–12815–JB. Adv. No. 91–6134.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

May 28, 1993.

---

Pamela L. Tremayne, Atlanta, GA, for plaintiff.

Bruce A. Hagen, Jeffrey S. Baillis, Atlanta, GA, for debtor/defendant.

### ORDER

JOYCE BIHARY, Bankruptcy Judge.

This adversary proceeding is before the Court on defendant's motion to set aside the Court's Order of August 17, 1992, denying debtor's discharge in bankruptcy. Defendant's motion is brought pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure which makes Rule 60 of the Federal Rules of Civil Procedure applicable to bankruptcy cases. The August 17, 1992 Or-

der which defendant seeks to have set aside denied defendant's discharge in bankruptcy under 11 U.S.C. § 727(a)(3). After carefully reviewing the record, the motion, and plaintiff's response, the Court concludes that defendant's motion should be denied.

The primary ground for plaintiff's objection to discharge was under § 727(a)(3) of the Bankruptcy Code which provides that a discharge should be denied if a debtor fails to keep or preserve any recorded information "from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case." In the pretrial stages of this adversary proceeding, defendant was less than cooperative in discovery. Plaintiff brought discovery motions and a motion for summary judgment based on debtor's refusal to produce meaningful financial information. At hearings in open court, the Court explained to debtor with counsel present the need to produce financial information if debtor wished to obtain a discharge.

This case was tried on May 15, 1992. The Court entered oral findings of fact and conclusions of law on the record on May 18, 1992 pursuant to Fed.R.Bankr.P. 7052, and on May 20, 1992, the Court entered a written order pursuant to the oral ruling. In its ruling, the Court took the extraordinary step of allowing debtor an opportunity to supplement the record and obtain a discharge by producing bank statements and requested checks for 1986. The Court clearly instructed debtor with counsel present as to what he must produce and by when in order to receive a discharge. The instructions were given both at the conclusion of the trial on May 18, 1992 and in the May 20, 1992 Order. The documents which debtor was ordered to produce in the May 20, 1992 Order constituted a small portion of plaintiff's request for financial information.

The May 20, 1992 Order provided, in pertinent part, as follows:

With respect to the objection under § 727(a)(3), defendant will be given a brief period of time in which to produce certain records for 1986.

On or before June 4, 1992, defendant must produce copies of the following documents at the offices of plaintiff's counsel at 10:00 a.m.: all monthly bank statements and all deposit slips for each bank account maintained by defendant during 1986.

Plaintiff shall have ten (10) days from the receipt of the bank statements and deposit slips in which to provide defendant with a reasonable list of individual checks (the "List") which plaintiff seeks to review. Defendant shall have ten (10) days from the receipt of the List in which to provide plaintiff with copies of the front and back of each requested check.

If defendant fails to comply with this Order, then it will be appropriate to enter a judgment in favor of the plaintiff on the objection to discharge pursuant to § 727(a)(3). Plaintiff shall have until July 15, 1992 to file a motion requesting judgment, if defendant fails to comply with the conditions set forth in this Order.

Court's Order entered May 20, 1992.

On July 15, 1992, plaintiff filed a motion and brief detailing the parties' actions subsequent to the May 20, 1992 Order and requesting that a judgment be entered denying debtor's discharge under § 727(a)(3). Defendant failed to file any response within ten days as required by LR 220–1(b)(1), NDGa., made applicable to adversary proceedings by BLR 705–2, NDGa. On August 17, 1992, the Court granted plaintiff's motion, noting that defendant had not filed any response to the motion for judgment and failed to comply with those portions of the May 20, 1992 Order requiring the production of copies of deposit slips and any requested checks.

Debtor's motion to set aside the Order and Judgment is brought almost six months after the entry of the Order and Judgment. Debtor argues that he is entitled to relief under Fed.R.Civ.P. 60(b)(1) and (b)(6).[1] Pursuant to Fed.R.Civ.P. 60(b)(1), a party may be relieved from the effect of a final judgment or

---

1. Debtor actually cites Fed.R.Bankr.P. 9024(b)(1) and (b)(6) as grounds for relief. The Court, however, will construe this reference as denoting Fed.R.Civ.P. 60(b)(1) and (b)(6) since Bankruptcy Rule 9024 contains no such subparts and merely incorporates Fed.R.Civ.P. 60.

**318**

order upon motion for "mistake, inadvertence, surprise, or excusable neglect". Such a motion must be made within a reasonable time and must be made within one year after the order was entered.

 The Supreme Court recently clarified the meaning of "excusable neglect" in the case of *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* — U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In *Pioneer Investment,* the Court considered whether an attorney's inadvertent failure to file a proof of claim before expiration of the bar date could constitute "excusable neglect" within the meaning of Fed. R.Bankr.P. 9006(b)(1). The Court examined the meaning of that term in analogous contexts, such as Fed.R.Civ.P. 60(b), and concluded that it encompasses situations in which a failure to comply is attributable to negligence. *Pioneer Investment,* — U.S. at ——, 113 S.Ct. at 1497–98. Thus, a movant need not show that he was faultless and that the delay was the result of circumstances beyond his control. Negligence lies between an inability to respond and an intentional flouting of a deadline. Once "neglect" is shown, the Court concluded that an equitably based inquiry into the relevant circumstances based on an assessment of certain factors, is necessary to determine whether it was "excusable."

 Defendant has not made a showing of excusable neglect under Fed.R.Civ.P. 60(b)(1). First, the allegations in defendant's motion to set aside the judgment do not amount to "neglect" at all. Debtor's failure to comply with the May 20, 1992 Order and failure to respond timely to the motion for judgment appear to have resulted from intentional and conscious decisions by debtor and debtor's counsel, not from neglect or negligence. Mr. Bhandari states in his affidavit that he did not produce *any* of the requested checks, because he thought the number of checks requested was excessive and unreasonable. He also states that "[d]espite my protests, my attorney failed to seek any clarification as to what constituted a 'reasonable' number of checks for me to be produce [sic]." (Prem Bhandari Aff. ¶ 7.) Debtor further states that he was aware that

plaintiff had filed a motion seeking the entry of judgment and that his attorney told him "not to worry." These sworn statements by debtor suggest that debtor's failure to produce any checks and debtor's attorney's decision not to file a timely response to the plaintiff's July 15, 1992 motion for judgment were not the result of inadvertence or forgetfulness, but were the result of intentional decisions by debtor and his attorney.

 Second, even if debtor's failure to comply with the May 20, 1992 Order and debtor's failure to file a timely response to the plaintiff's July 15, 1992 motion for judgment were the result of neglect, the neglect is not "excusable". In *Pioneer Investment, supra,* the Supreme Court stated, in pertinent part, as follows:

> With regard to determining whether a party's neglect of a deadline is excusable, we are in substantial agreement with the factors identified by the Court of Appeals. Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. ... These include, as the Court of Appeals found, the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. See 943 F.2d 673, at 677.

*Pioneer Investment,* — U.S. at ——, 113 S.Ct. at 1498 (footnotes omitted).

Taking account of all the circumstances, the Court does not find the "excusable neglect" required to set aside a judgment under Rule 60(b)(1). Setting aside the judgment here would prejudice the plaintiff. Plaintiff has been seeking financial information from this debtor for nearly two and a half years and received what he assumed was a final determination as to the status of debtor's discharge in August of 1992. Setting aside the judgment would also disrupt efficient judicial administration. The discharge was de-

nied and notice of the denial of discharge was given to all creditors in August of 1992. Defendant did not file an appeal or any motion for reconsideration within the time set out in the local rules, and the judgment became final. *See* LR 220–6, NDGa. To set aside the judgment now would require notifying all creditors that the discharge which was denied is now a possibility and that debtor will have yet another period of time to produce checks to comply with the May 20, 1992 Order. This would be an unwieldy and confusing process.

Debtor did not make a good faith attempt to comply with the May 20, 1992 Order. Debtor now argues that plaintiff requested copies of too many checks. Even if that were so, it does not justify debtor's decision to produce *none* of the requested checks. It does not justify debtor's decision not to seek any direction or reduction in the list from the Court promptly after receiving the list. It does not justify defendant's failure to file a timely response to plaintiff's motion for judgment. Finally, it does not justify defendant's waiting almost six months to file the instant motion, stating that he didn't understand how many checks he had to produce. Throughout the case, defendant has resisted providing financial information requested by plaintiff. Defendant's attitude was that he did not have to provide information during discovery, that he was justified in destroying his records, and that he had no reason to try to obtain copies of his bank records. The Court gave defendant a final chance to produce bank records for 1986, and defendant decided he did not want to produce any checks, because he thought it was unreasonable. The Court does not find that the defendant has acted in good faith within the spirit of *Pioneer Investment.*

In *Pioneer Investment,* the Court considered it significant that the deadline at issue (a deadline for filing proofs of claim) was not prominently announced and was not accompanied by an explanation of its significance. The Supreme Court agreed with the Sixth Circuit that the notice of the deadline was "peculiar" and "inconspicuous". In the case at bar, the notice of the time in which the checks were to be produced was prominently announced in the May 20, 1992 Order, and its significance was explained to the debtor in open court and in the Order.

■ Debtor argues that his attorney was negligent and gave him bad advice. This argument is not a ground for setting aside a judgment under Rule 60(b)(1). In *Pioneer Investment, supra,* the Supreme Court reaffirmed the principle that clients must be held accountable for the acts and omissions of their attorneys. *Pioneer Investment,* —— U.S. at ——, 113 S.Ct. at 1499; *see also Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962), construing Fed.R.Civ.P. 41(b) (involuntary dismissals). Clients may not escape unfavorable rulings by disavowing the acts or omissions of their attorney. *Id.*[2] The Supreme Court held it was error to consider whether a client did all it reasonably could in policing its attorney's conduct and stated that the proper focus is whether the attorney, as the client's freely selected agent, did all he or she reasonably could to comply with the deadline. The neglect of both the client and his attorney must be excusable. In other words, defendant cannot simply blame his attorney for being negligent and then argue six months later that this negligence is excusable on his part. If his attorney's negligence in failing to meet the deadline was not excusable, then defendant is bound by that determination. Defendant does not argue that his attorney's conduct was excusable.

---

**2.** *See also Kagan v. Caterpillar Tractor Co.,* 795 F.2d 601, at 609, 611–12; *Tolliver v. Northrop Corp.,* 786 F.2d 316, 319 (7th Cir.1986) (holding client responsible for ill consequences helps ensure that both client and attorney will comply, otherwise incentive of each to be diligent would be reduced); *Pryor v. United States Postal Service,* 769 F.2d 281, 287–89 (5th Cir.1985).

The facts in *Kagan, supra,* are in some respects similar to this case. There, relief was denied when an attorney failed to appear at a pretrial conference and failed to advise the court of a scheduling predicament or to offer a timely explanation for his absence. Further, he did not respond to a motion to dismiss and neither he nor the client nor the client's new attorney informed the court of their desire to continue the suit until some three and a half months later. *Kagan,* 795 F.2d at 609–11.

It is also relevant here that the attorney whom defendant blames, Roger Ghai, moved to withdraw as debtor's counsel two months before trial. Debtor opposed the motion and filed his own motion expressing his desire that Mr. Ghai continue to represent him. The Court denied the motion to withdraw. Now debtor blames the attorney whom he wanted to stay in the case. Finally, as the Fifth Circuit observed in *Pryor, supra,* any meaningful finality of judgments would vanish if exceptions were to be made each time a client asserted that he was unhappy with the outcome due to his lawyer's inadvertence or negligence. *Pryor,* 769 F.2d at 288–89; *Nemaizer v. Baker,* 793 F.2d 58, 61–63 (2d Cir.1986).

■■■ Defendant also contends that the judgment denying the discharge should be set aside under Fed.R.Civ.P. 60(b)(6) which allows a court to reopen a judgment even after one year has passed for "any other reason justifying relief from the operation of the judgment". Fed.R.Civ.P. 60(b)(1) and 60(b)(6) are mutually exclusive. *See Pioneer Investment,* —— U.S. at ——, 113 S.Ct. at 1497; *Solaroll Shade and Shutter Corp. v. Bio–Energy Systems, Inc.,* 803 F.2d 1130, 1132–33 (11th Cir.1986); *Nemaizer,* 793 F.2d at 63. The Court further finds that debtor has not shown "extraordinary circumstances" suggesting his faultlessness in this case as required under Rule 60(b)(6). *Pioneer Investment,* —— U.S. at ——, 113 S.Ct. at 1497.

In accordance with the above reasoning, defendant's motion to set aside the Court's Order and Judgment of August 17, 1992 denying his discharge is DENIED.

IT IS SO ORDERED.